IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Trina M. Primmer,                    :

        Plaintiff,                   :

    v.                               :        Case No. 2:14-cv-2245

                                     :        JUDGE JAMES L. GRAHAM
Commissioner of Social Security,          Magistrate Judge Kemp

        Defendant.                   :

REPORT AND RECOMMENDATION

I.  Introduction

    Plaintiff, Trina M. Primmer, filed this action seeking
review of a decision of the Commissioner of Social Security
denying her applications for disability insurance benefits and
supplemental security income.  Those applications were filed on
June 14, 2011, and alleged that Plaintiff became disabled on
January 10, 2011.

    After initial administrative denials of her claim,
Plaintiff was given a video hearing before an Administrative Law
Judge on January 3, 2013, and a supplemental video hearing on May
16, 2013.  In a decision dated July 19, 2013, the ALJ denied
benefits.  That became the Commissioner's final decision on
September 16, 2014, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the
administrative record on February 5, 2015.  Plaintiff filed her
statement of specific errors on March 12, 2015, to which the
Commissioner responded on May 12, 2015.  No reply brief has been
filed, and the case is now ready to decide.

II.  The Lay Testimony at the Administrative Hearing

    Plaintiff, who was 41 years old at the time of the second
administrative hearing (she did not appear at the first) and who
has a GED, testified as follows.  Her testimony appears at pages

57-77 of the administrative record.

Plaintiff first testified that, after she got her GED, she took classes to be a nurse's aide and got a certification in that area.  She was living with family members and had no income other than food stamps for her daughter.  She had worked through the Department of Job and Family Services after her alleged onset date, which was a requirement for receiving benefits.  Her job was removing staples and paper clips from papers which were to be shredded.  She worked 25 to 30 hours per week.  The job was made more difficult due to her anxiety in being around people and she ended up being sanctioned.

Prior to that, Plaintiff had worked as a home health aide. Her job was to care for her mother-in-law, a job she held for twelve years.  Before that, she had worked in several nursing homes.  She also stopped working as a home health aide due to anxiety interfering with the accomplishment of her goals.

In response to a question asking about her emotional health since that time, she said that she could not do her normal activities and often felt overwhelmed.  She did not help with housework very much and could not complete tasks.  Plaintiff described having panic attacks which affected her ability to breathe.  She had not had one in several months but had stayed at home for most of that time.  Her only trips outside the home were to go to the grocery store with her sister and occasionally to attend an event of her daughter's.  She testified to having racing thoughts at night and getting only two or three hours of sleep.  Additionally, she had nightmares.  She napped during the day three or four times per week.

In 2012, Plaintiff was hospitalized for depression.  Her condition improved with therapy after that.  She had good days and bad days and did not know why she was depressed on the bad days.  On a bad day, she typically did not leave her room.  That

happened once or twice a week.  Additionally, she had crying spells almost every day and suffered from memory problems. Plaintiff had headaches three or four times per week as well. Her symptoms had gotten much worse since her husband died in May, 2011.

### III.  The Medical Records

The medical records in this case are found beginning on page 357 of the administrative record.  The Court will summarize those records, as well as the opinions of the state agency reviewers, to the extent that they are pertinent to Plaintiff's statements of error, which focus on her psychological impairments rather than any physical limitations.

Plaintiff's arguments about her psychological impairments center around, first, the treatment records from Marion Independent Physicians Association, and, second, the opinion of state agency reviewer Dr. Matyi.  The Court will highlight these records as well as the opinion of the consultative examiner, Dr. Dubey.  The Commissioner's memorandum contains a very thorough summary of all of the records of psychological treatment.

Staring with Dr. Dubey's report, Plaintiff saw him on September 26, 2011.  She said that her brother, with whom she was living, was her primary source of financial and emotional support.  She had begun psychiatric treatment three months previously and said that her treatment was helpful.  She reported being generally depressed and sad but denied mood swings.  At that time, she had no suicidal thoughts, but did have symptoms of anxiety including shortness of breath and increased heart rate. She told Dr. Dubey she was fired from her last job due to her employer's discovering that she had a misdemeanor charge. Plaintiff interacted appropriately with others during the evaluation and she showed neither anxiety nor distress.  No memory problems were observed.  She had regular interaction with

her family and could take care of herself.  Dr. Dubey diagnosed
an adjustment disorder with depressed mood as well as a
depressive disorder.  He rated her GAF at 65 and thought she
could remember and carry out simple work instructions, could
maintain attention, concentration, persistence, and pace to
perform simple tasks, that she had no history of problematic
interactions with others, and that her ability to withstand work
stress was "evidenced by, but not limited to, her job history"
and the fact that she behaved in a calm manner during the
interview.  (Tr. 402-08).

There are a number of notes dated in 2011 from Sharen Orso,
a nurse, relating to medication management.  They reflect that
Plaintiff was receiving medication for depression and to help her
sleep.  She appeared to be generally normal when seen, although
she did report some symptoms such as difficulty sleeping, and she
was tearful at times. (Tr. 425-32).

The notes from Marion Independent Physicians Association
show variation in Plaintiff's condition and complaints over time.
A few examples will illustrate that point.  On June 28, 2012, the
notes describe Plaintiff as having some anxiety, but "overall her
mood is okay.  Sleep and appetite maintained; no serious problems
reported."  A month later she described depression most of the
day, but said her symptoms had improved since the last visit.
She intended to move into her own house if she was approved for
disability benefits.  She did report memory and concentration
problems as well as sleep disturbance.  Her motivation was
described as "fair."  In October, she was cooperative and engaged
in the interview and her thought process was coherent and
conversant.  She said she had been more "weepy" lately.  Yet
another note said she reported stable mood, symptoms controlled,
and stress manageable.  Plaintiff did report some suicidal
thoughts in 2012 and expressed a willingness to go to the

-4-

hospital, which she did. She was improved after one hospital stay, with fewer suicidal thoughts and less anxiety and depression. Notes also showed intact immediate and recent memory and judgment. At one point, apparently early on in her treatment, her GAF was rated at 60. Her mood was described again as "better" in late 2012 and she reported no serious problems with either sleep or appetite. The same is true of a note in early 2013, which also indicated she had been in jail for some fines and for driving under suspension. She was again described as stable in April, 2013. She took various medications throughout this period.

The two state agency psychologists who reviewed the records both concluded that Plaintiff's condition did not meet any section of the Listing of Impairments. Dr. Tangeman found moderate limitations in the ability to deal with detailed instructions and said she was capable of simple tasks with explanation for change. (Tr. 90-93). Dr. Matyi said that despite some restrictions, Plaintiff could work in a setting in which duties were routine and predictable and where changes were well-explained and introduced slowly. She should also not be required to deal with the public and could actually carry out not only simple but occasional complex instructions. (Tr. 114-16).

IV. <u>The Vocational Testimony</u>

Susan Lyon, a vocational expert, testified at the first administrative hearing. Her testimony begins at page 83 of the administrative record.

Ms. Lyon began by identifying Plaintiff's past relevant work as a home health aide, a job which is, under the <u>Dictionary of Occupational Titles</u>, a medium, semiskilled job. However, Plaintiff performed it at a heavy to very heavy exertional level.

Ms. Lyon was then asked to answer some questions about a hypothetical person who could do light work with some

-5-

restrictions, including postural restrictions and limits on
exposure to machinery and unprotected heights.  The person also
was limited to simple, routine, repetitive tasks with no
interaction with the public and occasional brief and superficial
interaction with coworkers.  According to Ms. Lyon, such a person
could not do the home health aide job, but he or she could work
as an assembler, inspector, and packer.  She gave numbers for
such jobs as they existed in the regional and national economies.

Next, Ms. Lyon was asked to assume that the person was off
task for more than 10% of the workday.  That would eliminate all
competitive jobs.  The same would be true if the person missed
more than one day of work per month on an unscheduled basis.

V.  <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 20-
46 of the administrative record.  The important findings in that
decision are as follows.

The Administrative Law Judge found, first, that Plaintiff
met the insured status requirement of the Social Security Act
through December 31, 2015.  Next, he found that she had not
engaged in substantial gainful activity since her alleged onset
date of January 10, 2011.

Going to the second step of the sequential evaluation
process, the ALJ determined that Plaintiff had severe impairments
including osteoarthritis, low back pain, obesity, anxiety, and
adjustment disorder.  The ALJ also found that these impairments
did not, at any time, meet or equal the requirements of any
section of the Listing of Impairments (20 C.F.R. Part 404,
Subpart P, Appendix 1), including sections 12.04 and 12.06.

Moving to step four of the sequential evaluation process,
the ALJ found that Plaintiff had the residual functional capacity
to perform work at the light exertional level with some other
restrictions, and could also perform only simple, routine,

-6-

repetitive tasks in a setting where no interaction with the public, and only occasional brief and superficial interaction with coworkers, was required.

The ALJ found that, with these restrictions, Plaintiff could not perform her past relevant work, but she could do the jobs identified by the vocational expert including assembly work performed at a bench or table, inspection work performed at a bench or table, and hand packaging work performed at a bench or table. He also concluded that these jobs existed in significant numbers in the State of Ohio and nationally. Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, Plaintiff raises four issues. She asserts that (1) the ALJ erred by not finding that her impairment met or equaled section 12.04 of the Listing of Impairments; (2) the ALJ's credibility analysis was deficient; (3) the ALJ improperly evaluated the opinion of Dr. Matyi; and (4) the ALJ should have obtained testimony from a psychologist or psychiatrist. These issues are considered under the following legal standard.

<u>Standard of Review</u>. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" <u>Id</u>. <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th

Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

A.   <u>Listing Section 12.04</u>

Plaintiff's first argument is that her psychological impairments met or equaled the requirements of section 12.04 of the Listing.  In particular, she asserts that the criteria found in section 12.04(B) were satisfied.  The Commissioner disagrees, asserting that substantial evidence supports the ALJ's finding on this issue.

Like many of the sections of the Listing relating to psychological impairments, the (B) criteria accompanying section 12.04 provide that, in order to satisfy that particular subsection, the claimant's impairment must produce marked restrictions in at least two of four areas: (1) activities of daily living; (2) social functioning; (2) maintaining concentration, persistence, and pace; and (4) repeated episodes of decompensation in work or work-like settings.  Plaintiff argues that the ALJ was compelled to find, from the evidence, that she had marked difficulties in social functioning and marked limitations in maintaining concentration, persistence, and pace. In support of the first part of this argument, she cites to the anxiety she experienced when working around others in her Job and

-8-

Family Services work assignment and to Dr. Matyi's note that she was markedly limited in her ability to deal with the general public.  In support of the second, she relies on her own testimony about memory deficiencies and fatigue, and on some treatment notes which refer to such issues.

The ALJ specifically discussed section 12.04 and found that Plaintiff had only moderate difficulties in social functioning and moderate difficulties in concentration, persistence, and pace.  If either of these determinations is supported by substantial evidence, Plaintiff's argument fails.

On the issue of concentration, persistence, and pace, the ALJ noted that Plaintiff was "able to follow instructions, pay bills, watch television, and handle money, activities that would require some level of sustained concentration." (Tr. 27).  She could also care for her daughter and pets, and "mental status examinations have revealed intact memory, attention, and concentration, and the claimant has demonstrated consistently coherent and concrete thought processes." Id.  Those findings are all supported by the record.  Additionally, Dr. Dubey, the consultative examiner, thought that Plaintiff could maintain sufficient concentration and attention to perform simple work tasks, and both Dr. Tangeman and Dr. Matyi found only a moderate limitation in the ability to maintain attention and concentration for extended periods.  (Tr. 92, 115).  Neither of them found Plaintiff's impairments to be of Listing severity.  Given this state of the record, the ALJ did not err in concluding that Plaintiff did not qualify for benefits under section 12.04, even if there was some evidence which might support a contrary conclusion.  See, e.g., Johnson v. Chater, 1995 WL 646325, *12 (N.D. Ind. Oct. 13, 1995) (holding that the ALJ was entitled to rely on state agency reviewers' conclusions about whether an impairment satisfied the "B" criteria), cited with approval in Doles v. Comm'r of Social Security, 2011 WL 2214181, *5 (S.D.

-9-

Ohio Apr. 13, 2011), adopted and affirmed 2011 WL 2214144 ( S.D. Ohio June 7, 2011).

B.   The Credibility Finding

In her second statement of error, Plaintiff contends that the ALJ erred in determining that her testimony concerning the severity of her symptoms was not fully credible.  She argues that, in fact, the medical records fully corroborate the way in which she described her symptoms and that the ALJ engaged in a selective reading of the record when he decided otherwise.  She asks for a remand so that a proper determination as to her credibility can be made.

A social security ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking.  Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors.  20 C.F.R. §404.1529(c)(3).  Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record.  See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

The ALJ made the following findings from the record.  First, he noted that the medical records did not fully corroborate Plaintiff's complaints.  Part of that finding involved a consideration of the evidence of physical limitations, a matter which Plaintiff does not discuss in her statement of errors.  In that regard, the ALJ, after discussing the medical records at length, concluded that the relatively normal examination findings supported a limitation to work at the light exertional level, but

-10-

no further.  Plaintiff does not contest this finding nor does she argue that the ALJ did not have valid grounds for concluding that her description of physical symptoms was not entirely credible.

Plaintiff does take issue with the ALJ's assessment of her psychological limitations.  Again, in the administrative decision, the ALJ provides a comprehensive summary of the treatment records, noting again (correctly) many normal findings. He also discussed Dr. Dubey's evaluation results at length, noting that he had assigned Plaintiff a GAF of 65, which indicates only mild symptoms, and also said that her condition was likely to improve with treatment.  The ALJ additionally observed that Plaintiff's current treating source assessed her GAF at 60 and reported a number of essentially normal findings at the various appointments during which Plaintiff received counseling, as well as indications that her symptoms improved at times.  Overall, he characterized the record as containing "generally mild" mental health findings and improvement with medication, and described the treatment she received for both physical and mental impairments as conservative.  (Tr. 40-41). Finally, he examined her activities of daily living and pointed to her ability to prepare meals, do laundry, go to the store, attend doctors' appointments, socialize with her family, follow instructions, pay bills, watch television, and handle money, as evidence that she was more functional than her testimony indicated.

Here, Plaintiff's complaint that the ALJ "cherry-picked" the record and focused more on matters which detracted from her credibility than those which supported it is simply not borne out by a close review of the administrative decision.  While it is true that an ALJ must consider all of the evidence in reaching a decision, "an ALJ does not 'cherry pick' the evidence merely by resolving some inconsistencies unfavorably to a claimant's position."  Solembrino v. Astrue, 2011 WL 2115872, *8 (N.D. Ohio

-11-

May 27, 2011).  Further, as this Court has often said, "[b]ecause an ALJ is charged with observing a witness's demeanor, his findings on credibility must be accorded great weight and deference," Baker v. Comm'r of Social Security, 2014 WL 3689231, *6 (S.D. Ohio July 24, 2014), and it is simply not this Court's job to re-weigh the evidence.  The ALJ's decision in this case does not represent a selective weighing of the evidence, and it cites to a number of factors which are both relevant to the credibility determination and which are supported by the record. Thus, this particular assignment of error provides no basis for a remand.

### C.  Dr. Matyi's Opinion

As her third statement of error, Plaintiff argues that the ALJ's decision treated Dr. Matyi's opinion inconsistently, both affording significant weight to it and, at the same time, disregarding portions of the opinion which suggested a more restrictive residual functional capacity than that found by the ALJ.  In particular, she quotes from a narrative statement (Tr. 115) describing Plaintiff as crying easily, being anxious around others, being slow-paced, and having concentration difficulties as suggesting limitations not reflected in the RFC, as well as Dr. Matyi's observation that any changes in the work setting should be introduced slowly and be well-explained.  The Commissioner responds by arguing that most of the quoted language does not represent functional limitations, and that the ALJ accommodated Dr. Matyi's concern about introducing work changes slowly by limiting Plaintiff to the performance of simple one-step or two-step tasks, in contrast to the more difficult tasks that Dr. Matyi thought Plaintiff could perform.

The ALJ assigned great weight to Dr. Matyi's opinion, stating that it was consistent with the record as a whole.  He also adopted much of her opinion about Plaintiff's mental residual functional capacity, although he did not specifically

-12-

explain why the restriction on the slow introduction of changes
in the workplace was not part of that finding.  The Commissioner
is correct that the narrative observations made by Dr. Matyi are
not a residual functional capacity finding and that her opinion,
as a whole, does support the proposition that Plaintiff, while
limited, can still function in the workplace.  The Court accepts
the Commissioner's rationale that simple instructions do not
ordinarily entail many or rapid changes in a work setting, and in
any event the evidence does not mandate such a finding.  Under
these circumstances, there is no error in the way that the ALJ
treated Dr. Matyi's opinion.

        D.  The Need for Expert Testimony

    Lastly, Plaintiff argues that this case required expert
testimony in order for the ALJ to interpret properly the evidence
concerning her mental impairment.  She contends that the last
opinion on the subject of whether her impairment met or equaled
the Listing did not take into account additional evidence
concerning that impairment and that it was, in any event,
"ambiguous and contrary at best."  Statement of Errors, Doc. 10,
at 11.  The Commissioner notes, in response, that a medical
expert need be called only when additional evidence, in the
opinion of the ALJ, might alter the findings of the state agency
reviewer, and that this is not the situation here.  The
Commissioner also points out that Plaintiff did not request such
evidence during the administrative proceedings, and that this
factor weighs against ordering a remand.

    As the Commissioner points out, Social Security Ruling 96-6p
addresses the issue which Plaintiff has raised, and posits two
circumstances under which an updated medical opinion is needed:

        * When no additional medical evidence is received, but
        in the opinion of the administrative law judge ... the
        symptoms, signs, and laboratory findings reported in
        the case record suggest that a judgment of equivalence
        may be reasonable; or

-13-

> \* When additional medical evidence is received that in
> the opinion of the administrative law judge ... may
> change the State agency medical or psychological
> consultant's finding that the impairment(s) is not
> equivalent in severity to any impairment in the Listing
> of Impairments.

On this second point, the ALJ has substantial discretion to
determine if a medical expert is needed to evaluate the new
evidence.  If the state agency opinions simply do not address a
particular impairment which might meet or equal some section of
the Listing, the failure to obtain an expert opinion as to that
issue is error, see, e.g. Cirelli v. Astrue, 751 F.Supp.2d 991
(N.D. Ill. 2010), but that is not this case.  Both Dr. Tangeman
and Dr. Matyi considered the very impairment which, according to
Plaintiff, needed additional expert evaluation.  Further, this
Ruling "explicitly grants *the* ALJ the discretion to determine
whether the newly-submitted evidence so changes the landscape of
the claimant's impairments that an expert could now find them to
medically equal a listing." Johnson v. Comm'r of Social Security,
2014 WL 4798963, *8 (E.D. Mich. Sept. 26, 2014)(emphasis in
original).  The ALJ thoroughly reviewed the additional medical
records, which consisted primarily of treatment notes not all
that different from the ones generated in 2011, and did not see
the need to obtain an updated medical opinion as to the issue of
the Listing.  The Court cannot deem that to be an abuse of
discretion, and therefore finds no merit in Plaintiff's final
statement of error.

### VII.  Recommended Decision

Based on the above discussion, it is recommended that the
Plaintiff's statement of errors be overruled and that judgment be
entered in favor of the Defendant Commissioner.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation,
that party may, within fourteen (14) days of the date of this

-14-

Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge